PHILIP GARISS vs. ELIAS L. GARISS and ISAIAH GARISS.*

1. The enforcement of the specific performance of a contract is an exercise of the extraordinary jurisdiction of the court, resting in *sound discretion*.

2. Specific performance will not be decreed, where the party seeking it has been guilty of *laches*, or negligent in his application.

On final hearing.

*Hamilton*, for complainant.

*McCarter*, for defendants.

* 2 *Beasley* 320.

THE CHANCELLOR. By the terms of the contract upon which the bill is founded, the time for its performance expired on the first of April, 1854. There was neither a payment, nor a tender of the purchase money by the complainant, according to the terms of the agreement. But the bill alleges that the time for performance was extended by a parol agreement between the parties; that under this agreement the complainant made valuable improvements on the premises, and continued in peaceable possession until 1859, when the defendant, Elias L. Gariss, conveyed to Isaiah Gariss, who took title with notice of the complainant's equity. The defendants, by their answers, expressly denied these allegations of the bill, and the injunction which had been issued to restrain the defendants from disturbing the complainant's possession, was dissolved on the ground that the equity of the bill was fully denied by the answers.

The case made by the bill is not sustained by the evidence. The parties to the contract are father and son. In December, 1850, the real estate of Philip Gariss, the father, was sold under execution by the sheriff of Sussex, and purchased by Elias L. Gariss, the son, for $1101. The land conveyed by the sheriff consisted of two tracts; the one containing about twenty-one and a half acres, and the other nearly twenty-five acres. Four hundred dollars of the purchase money were realized by the resale of the twenty-one acre lot. Three hundred dollars were advanced by the son. About fifteen acres of the twenty-five acre lot were reconveyed by the son to the father, Philip Gariss, and his wife. The balance, something less than ten acres, was retained by the son, as security for the advance made by him upon the purchase at the sheriff's sale. On the ninth of April, 1851, the parties entered into an agreement, by which it was stipulated that, upon the payment of the $300 advanced by the son, on the first of April, 1854, with interest, the ten acre lot should be reconveyed by the son to the father. This is the agreement, the specific performance of which is now sought to be enforced.

The contract was doubtless made for the father's benefit, to afford him an opportunity of redeeming the land by paying the amount advanced by the son. I see no reason to doubt that the arrangement was carried out by the son in entire good faith. It is shown that the father was permitted to remain upon the land, and was from year to year offered the privilege of redeeming it until the spring of 1859, when he was distinctly notified by the son, that the same would be sold unless he paid the amount due. During this period the father neither paid, nor offered to pay, any part of the principal. He utterly failed to fulfil the contract upon his part. He continued in possession, with the assent of the son, but whether under the terms of the contract to purchase, or as a tenant paying rent, is not very clear from the evidence. Nor do I deem it at all material to the result of the case. If he continued in possession as a tenant, the contract to purchase was determined, and there can be no ground for the complainant's claim. But assuming that the complainant continued in possession until 1859 under the contract to purchase, the time for performance having been from year to year extended by the son, there is no pretence that it was extended indefinitely, nor is there any satisfactory evidence that it was extended beyond the first of April, 1859. The allegation of the bill is, that relying upon the assent of the defendant to the extension of the time for performance, the complainant made improvements on the premises by the erection of a building. This is denied by the answer, and clearly disproved by the evidence. The evidence shows an entire willingness on the part of the son that the father should take the property, upon the payment of the money advanced, according to the contract, for years after the time limited for performance had expired, and great forbearance in enforcing his legal rights. This forbearance was exercised long after there seemed any reasonable ground for hope that the father would ever be able, or willing, to fulfil his contract. He was largely in arrear for interest upon the purchase money, or for rent, when the son announced his purpose to sell the

property. The fact that the son sold a part of the land in 1854, very soon after the expiration of the time for performance limited by the contract, and that the purchaser took, and has ever since held possession, with the knowledge of the father, is strong confirmatory evidence of the view of the transaction presented by the defendants answer, and that the contract to purchase was then in fact determined.

But even if the contract continued, and if the defendant, by a course of conduct inconsistent with the intention of insisting upon all objections grounded on the lapse of time, be deemed to have waived all objections on this ground, the complainant is not entitled to relief. I think the evidence clearly shows that the vendor announced a clear purpose of terminating the contract on the first of April, 1859. It is clearly shown that in July, 1859, Elias L. Gariss entered into a contract for the sale of the property to a third party. Written notice of the contract was immediately given to the complainant. The deed, in pursuance of this contract, was delivered in December, 1859. The purchaser went into possession under the deed, fenced the premises, and, with the exception of some opposition made by the complainant at the time of his taking possession, without any objection from the complainant. In April, 1860, for the first time, the complainant tendered the purchase money and paid the arrears of interest due to the vendor. The acceptance of the purchase money was refused, on the ground that the premises had been sold and conveyed. The bill to enforce the specific performance of the contract was not filed till the tenth of May, 1861, more than two years after the complainant had been distinctly notified that the property would be sold, and nearly two years after the contract for sale had been made with a third party and the purchaser put into possession.

Enforcing the specific performance of a contract is an exercise of the extraordinary jurisdiction of the court, resting in sound discretion. *Alley* v. *Deschamps*, 13 *Vesey* 225; *Moore* v. *Blake*, 1 *Ball & Beat.* 62.

The relief will not be granted unless the party seeking it

is prompt in his application, or shows good reason for the delay. *Marquis of Hertford* v. *Boore,* 5 *Vesey* 719; *Milward* v. *Earl of Thanet, Ibid.* 720, *note b; Eads* v. *Williams,* 4 *De Gex M. & Gor.* 691; *Fry on Spec. Perf.,* § 732.

Here the complainant stood passively by, two years after he had been distinctly notified that the premises would be sold, and more than eighteen months after a sale had actually been made, and the purchaser had entered into possession, without taking any step to enforce his contract, or showing any satisfactory reason for the delay.

The bill must be dismissed with costs.