# JUNE TERM, 1869.

MERRITT, appellant, and BROWN, respondent.

1. A party who would seek specific performance must be prompt in asking the aid of the court. Unreasonable delay will, of itself, be often a bar to a suit of this character.

2. Executed parol agreements to buy in property at a sheriff's sale for the benefit of defendants in execution, can be sustained only on the ground of fraud.

3. When the elements of the case are, simply, a purchase under a parol promise to hold for the benefit of the defendant in execution, such a transaction cannot be enforced either at law or in equity.

4. The defendant agreed by parol to purchase property at a sheriff's sale for the benefit of the defendant in execution: the latter, at the time of the agreement, assigning to him twenty-five shares of stock to make the purchase "more beneficial to him." It was also agreed that the defendant in execution should raise the purchase money, and take the property within sixty days after the sale. *Held*, that the defendant in execution having failed to raise the money and redeem the property for over two years, and having per-

mitted, in the interim, the purchaser to improve the property, and in some respects use it as his own, had lost his right to enforce the specific performance of the contract. *Held also,* that the stock stood as collateral security, and that the purchaser must account for its value, it having been sold by him.

---

The opinion of the Chancellor is reported in 4 *C. E. Green* 286.

*Mr. Alward* and *Mr. Williamson,* for appellant.

*Mr. Gilchrist,* Attorney-General, and *Mr. Bradley,* for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

This bill seeks the specific performance of an agreement alleged to have been made by the defendant to purchase, for the benefit of the complainant, certain lands which were sold under an execution against him, issued out of the Court of Chancery in a foreclosure suit. The substantial facts upon which the complainant relies are, that at the sheriff's sale referred to, enough had been raised to satisfy all the money due on the mortgage except a balance of $9000, and that being anxious to save the residue of his property, he requested the defendant to buy it for him, who consenting, the complainant, "for that purpose and as a part of the purchase money," assigned to him twenty-five shares of stock, of the value of $2500. It is thus shown that the purchase was made upon this arrangement, no one present at the sale being interested in making the property bring more than the amount due to the mortgagee. The inequity charged upon the defendant is, that he refuses to permit the property to be redeemed according to this agreement.

The general question as to the legality of parol trusts of this character, was discussed with much acumen upon the argument before this court. Among other topics, the con-

sideration was very forcibly pressed, that it was of pre-eminent importance to enforce, with vigor, the statute of frauds in its application to sales made by public officers in pursuance of legal process. There can be no doubt that there is great weight in this argument. To permit, under ordinary circumstances, parol trusts to be set up by defendants in execution, against purchases at these sales, would, I think, be obviously subversive of the true interests of all parties connected with them. Perhaps no means could be devised more calculated to introduce distrust into the mind of buyers, and bring about a sacrifice of the property offered for sale. The admission of parties as witnesses in their own favor, coupled with the privilege of complainants to waive the oath to the answer of their adversaries, would largely enhance the evils to be apprehended from the introduction of such a rule in our equitable system. When, therefore, the elements of the case are simply a purchase, under a parol promise to hold for the benefit of the defendant in execution, I think such an arrangement, the statute of frauds being set up as a defence, cannot be enforced either at law or in equity. Such arrangements do not, in my opinion, fall within the doctrine which enables a court of equity to effectuate, in derogation of the statute, parol contracts touching lands on the plea of part performance. My reason for this view is, that in the instance now under consideration, the contract between the defendant in execution and the purchaser is, in no legal sense, partly performed. Such purchaser neither obtains nor holds possession of the premises purchased by virtue of his agreement to take the property in trust. On the contrary, he enters upon the land by force of the title vested in him through the deed from the sheriff, by operation of law. With respect to his possession, the defendant's contract with him is entirely nugatory; consequently, I am not able to perceive how it is to be claimed that such possession is, in part, an execution of such contract. It should also be observed that this rule, if adopted, would be disastrously broad, for it would em-

brace every case of an agreement to buy in lands in behalf of a defendant in execution, no matter how free from oppression or unfairness the transaction might otherwise be. I think there are not any decisions in this state which sustain such a doctrine. In *Combs* v. *Little*, 3 *Green's Ch.* 310, the statute of frauds was not pleaded, and in that case, as also in *Marlatt* v. *Warwick*, 4 *C. E. Green* 439, there were present circumstances of fraud upon which the judgment of the court rested. In the latter case, I have always understood the point now considered was not mooted in argument, and was passed without adjudication by this court. I have remarked that in both of these cases there were facts in proof evincive of fraud on the part of the purchaser, and this, in my estimation, is the correct ground on which to rest the jurisdiction of equity to enforce these parol contracts. Whenever an agreement of this nature has been entered into, and the purchaser has made use of it, or of any other contrivance, to obtain the property in execution for an inadequate price, or to the oppression of the defendant, the right to equitable relief is clear. The jurisdiction is founded on the sure ground that it is the province of a court of conscience to prevent the statute of frauds from being made productive of the very evils it was designed to suppress. But even in this class of cases, so important is it to maintain the utmost confidence in the efficiency of judicial sales, the purchaser should be protected against all pretences of a trust by parol, unless his *mala fides* be proved by the clearest and most complete evidence. But where such demonstrative proof exists, and where the contract between the defendant in execution and the purchaser is not of such a character as to affect injuriously the rights of creditors, then, as has been already remarked, a court of equity will frustrate the contemplated fraud by enforcing the contract specifically between the parties.

But in the case now before us, this question does not in fact arise, as the statute of frauds has not been set up as a defence, and the foregoing intimations of opinion have been

designed to exclude any inference which might have been made, if the subject had been passed without remark, that other views were acquiesced in.

The defence set up in this bill rests upon two grounds: First, that although the defendant did, in truth, agree with the complainant to buy in the lands in question for his benefit, that a fixed time to redeem was limited by the terms of such contract; and second, that if no time .. is originally limited, still the complainant's right to enforce the trust has been lost by his own delay and laches.

As I regard the facts of this case, time was not of the essence of this contract between these parties. According to the defendant's representation of the transaction, the complainant agreed to relieve him of the burthen of this purchase within sixty days from the time of the sale. I have no doubt that both these parties supposed it probable that this would be done, but I have failed to observe anything in the proofs which appears to indicate that the complainant was to lose absolutely the right of redemption, if he failed to comply on the day specified. The property was bought in at a price arbitrarily agreed upon, and without any exact reference to its real value; it is clear that the complainant regarded it to be of a greater value than the sum so fixed; it would, therefore, be a very harsh construction of his agreement with the defendant, to say that it was the understanding that if he was not punctual to the moment with his money, his right to redeem was forfeited. I think it would require very plain language, or very strong circumstances, to justify such a conclusion. The general principle is, that time is not regarded in equity as material to the contract, unless it is made so by express stipulation, or it reasonably follows from the situation of the contracting parties.

But it is not necessary to pursue this subject in any further detail, for on the second point taken in the answer, I am clear in my conclusion in favor of the defendant. Whatever may have been originally the nature of the agree-

ment, with respect to the point just considered, I have no doubt the Chancellor was justified in concluding that the complainant had lost the right by his own remissness, to call for a reconveyance of this land. The usual maxim is, that a party seeking specific performance must show himself ready, desirous, prompt, and eager, to perform the contract. Unreasonable delay will, of itself, be often a bar to a suit of this character. 3 *White & Tudor's L. C. in Eq.* 83. "And even," says Judge Story, in delivering the opinion of the court, in *Taylor* v. *Longworth*, 14 *Pet.* 172, "when time is not thus either expressly or impliedly of the essence of the contract, if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate period, been a material change of circumstances affecting the rights, interests, or obligations of the parties; in all such cases courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust." I think in the light of these rules, it may be fairly said that the complainant has lost his equitable claim to the lands in controversy. Admitting that the time for redemption was not definitely fixed by the agreement, still he could not reasonably require the defendant to retain the property indefinitely for his benefit. His stipulation was that he would redeem in sixty days; he made no offer to fulfill this engagement until after the lapse of over two years. This delay is but imperfectly explained; it is far from being justified. In this interval the complainant permitted the defendant to perform many acts which appeared to show that he considered himself the owner of the land. He improved the property by fencing and ditching, and in other ways. He sold part of it. There is some reason to suppose that the complainant himself entered into a negotiation for a purchase of a portion of these same premises. It is true, there are some circumstances which would somewhat blunt the point of these facts, and there is also some ground to suspect that the complainant has not

been very leniently dealt with by the defendant. But it would be useless to analyze the evidence on this subject, and I shall therefore content myself with saying, that as there is enough in the proofs to sustain the conclusion of the Chancellor, this court, even if doubts are entertained upon the subject, ought not to disturb that conclusion. On the main point involved in the case, I shall therefore vote for the affirmance of the decree.

Upon a collateral branch of the case, however, I think the plaintiff should have relief. I refer to the circumstances that he put into the hands of the defendant, at the time of entering into his contract with him, twenty-five shares of stock. This stock the defendant has since sold. I am unable to see upon what grounds the defendant can refuse to account for the moneys thus received. Both in his answer and in his testimony, when examined as a witness, he says, that " he understood " that if the complainant failed to take the land off his hands within the limited period of sixty days after the sale, the stock was to belong to him. Even if we should assume this as the fact upon this point, it may well be doubted, whether in equity he could retain this money. He does not deny that the land was worth the money which he paid for it, and it is clear that the complainant appraised it at a higher rate. In this aspect, then, this stock must have stood as a forfeit, in case of a breach of the contract by the complainant, for there is not the least reason to presume that either party regarded its value as the fair amount of damages which the defendant would sustain in case of a non-compliance on the part of complainant. This penalty, therefore, upon well known maxims, would stand in equity merely as security against loss. This circumstance of the case, therefore, regarded from the defendant's own point of view, would seem to fall within the principle that a court of conscience will prevent the inequity of a pure forfeiture. But, in point of fact, the proofs are overwhelmingly to the effect that there was no agreement that this stock should become absolutely the property of the defendant, in the

event of non-redemption by the complainant within the period prescribed. It is true, that the defendant, both in his answer and in his testimony, says that he so "understood" from what passed between himself and the complainant. But then he states what did pass, and it thus clearly appears that his inference was not justifiable. His statement in his answer is in these words, *viz*: "that the said complainant, finding the said Brown was unwilling to bid off the said property, for the purpose of inducing him so to do, and to make the purchase more advantageous" to him, the defendant "offered to transfer to him twenty-five shares of the capital stock of the E. S. P. Company, if he would purchase the property at $9000." When examined as a witness, the defendant stated that this was all that took place with regard to the assignment of this stock. I cannot perceive how, from this transaction, the intention of the complainant to forfeit the stock in any event, is to be deduced. He does not offer to sell the land and the stock, but, on the contrary, the assignment is made for the express consideration that the property, *i. e.* the land to be sold by the sheriff, should be purchased for the sum of $9000. It is also obvious that the "purchase" is made "more advantageous" to the defendant by the stock standing to him as his guarantee against eventual loss. Taking the facts from the lips of the defendant himself, I see no reason to say that it was the agreement of the parties, that this stock was either sold to the defendant, or was to be retained as liquidated damages for a breach of such agreement. But even if the defendant had testified explicitly to this fact, I should have no hesitation in my conclusion, that the evidence before me manifestly proves the truth to be otherwise. The complainant explicitly denies that he ever made any such arrangement. Mr. Hand, the witness who was present when the agreement was entered into, says, "the stock was assigned as collateral security;" and another witness, Mr. Rolston, who thinks he drew the assignment, and who was at the sale, declares

that the stock was to be " as security to Mr. Brown for any risks he might run himself by doing this favor to Mr. Merritt. This is my understanding of it; I understood it from Mr. Brown, as my conversation was with him." These witnesses are, confessedly, men of good standing and of intelligence. That which they testify to is uncontroverted, except to the extent that it is gainsayed by the defendant himself, in the manner heretofore criticised. It was fair that the defendant should hold this stock as a pledge against any loss which might have fallen upon him by reason of his beneficence to the complainant. But it is not equitable that he should claim to forfeit that pledge, when he admits, by his refusal to permit a redemption of these lands on conscionable terms, that he has sustained no detriment whatever. The proof should be very clear, upon which so extortionate a claim should be permitted to prevail. The evidence has entirely satisfied me that this stock was assigned to the defendant substantially as collateral security, and that consequently, he should account to the complainant for its value, being the price he sold it for and interest; a proper allowance being made for any expenses incurred by him in enhancing its value while in his hands.

The decree should be modified in conformity with these views. The complainant should be allowed his costs in both courts.

The whole court concurred.