THE MAYOR AND ALDERMEN OF JERSEY CITY, complainant-respondent,

*v.*

JERSEY CITY WATER SUPPLY COMPANY et al., defendants-appellants.

[Argued March 8th, 1922.   Decided June 19th, 1922.]

1. The cardinal rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, as far as that may be done without the violation of legal principles. And while an instrument must be construed according to the

intent of the parties as manifested by the instrument itself, yet, where the construction is doubtful, the court may look into the surrounding circumstances, and avail itself of such light as they may afford, in ascertaining the true meaning of the language and terms employed.

2. Where a city retained $500,000 from the sum due a water supply company under a clause in the company's contract to furnish the city with a water supply system, providing that the sum so retained should be paid to the company whenever the company should deliver to the city a "valid release" from a certain canal company and its lessee, releasing all their rights to divert the waters of the watershed of a certain river above a proposed reservoir site, "the same to take effect upon their abandonment of the navigation of said canal" between certain named points "under legislative sanction," a so-called release of such rights by the canal company and its lessee, reciting "this release to take effect upon our abandonment of the navigation of the" said canal between the points named in the contract "under legislative sanction," was not, no legislative sanction being shown, sufficient compliance with the contract to justify payment of the $500,000.

3. The mere fact that the successful party, in a cause in the court of chancery, is a municipal corporation, does not deprive that court of power to award a counsel fee to such successful party, to be taxed in the costs and to be paid by the unsuccessful party.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lewis, whose opinion is reported in *114 Atl. Rep. 421,* and *93 N. J. Eq. 36.*

Mr. John B. Humphreys, Mr. William A. Sumner and Mr. Richard V. Lindabury, for the appellants. .

Mr. Thomas J. Brogan and Mr. John Milton, for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is another phase of an old litigation.

Briefly, the pertinent facts are these:

Jersey City entered into a contract with Patrick H. Flynn for the construction of a new water supply, by the terms of which Flynn was to supply to the city the whole flow of the

Rockaway river, to the extent of seventy million gallons daily. Flynn became insolvent, and his interest in the contract was assigned to the Jersey City Water Supply Company, which proceeded with the performance of the contract. During the work of construction it was discovered that the Morris Canal and Banking Company had a superior right to divert the waters of the Rockaway river for the purposes of its canal. Thereupon, on July 8th, 1901, the contract was modified, pursuant to the authority conferred by chapter 207 of laws of 1901. *P. L. 1901 p. 416.* Subsequently, a litigation ensued between Jersey City and the water supply company based upon the assertion by the city that the works had not been completed according to the contract, and the court of chancery (the suit being one for specific performance) made a decree and therein provided that the city should retain the sum of $500,000 as authorized by the contract, dated July 8th, 1901, until the same should become due under the terms and conditions of the contract. *Jersey City* v. *Flynn, 74 N. J. Eq. 104.* That decree, so far as concerns this matter, was affirmed in this court. *76 N. J. Eq. 607.*

The provision of the contract referred to, and which gives rise to the present controversy, is paragraph 4, and reads as follows:

"*Fourth*—Whenever the contractors shall deliver to Jersey City a *valid release* from the Morris Canal and Banking Company and its lessee, releasing all their rights to divert the waters of the Rockaway river watershed out of said river above said proposed reservoir site, the same to take effect upon their abandonment of the navigation of said canal between Dover and Montville, under legislative sanction, for a sum therein to be named and to be paid upon such abandonment, then there shall be paid over by Jersey City to said contractors all of said sum of five hundred thousand dollars, except the amount named in said release, which last-mentioned amount the contractors authorize Jersey City to pay to said Morris Canal and Banking Company and its lessee upon the actual abandonment aforesaid."

On May 12th, 1909, the Jersey City Water Supply Company obtained from the Morris Canal and Banking Company and its lessee, the Lehigh Valley Railroad Company, and delivered to Jersey City an instrument which, after reciting, among other things, the agreement of July 8th, 1901, continued as follows:

"Now know ye, that we, the said Morris Canal and Banking Company and Lehigh Valley Railroad Company, lessee of the Morris Canal and Banking Company, * * * in consideration of the premises, and of the sum of one dollar ($1.00), to us paid upon the execution of this writing and to be paid to us on such abandonment of navigation, have released, and by these presents do release, unto the mayor and aldermen of Jersey City, their successors and assigns forever, all our rights to divert the waters of the Rockaway river watershed out. of said river above the proposed reservoir site mentioned in said supplemental agreement of July 8th, 1901, upon which site there has since been erected a reservoir below Boonton by the Jersey City Water Supply Company under its contracts with Jersey City.    This release to take effect upon our abandonment of the navigation of the Morris canal, between Dover and Montville, under legislative sanction and upon the payment by the mayor and aldermen of Jersey City to us of the sum of one dollar ($1.00) as hereinbefore provided upon such abandonment."

In the earlier litigation, to which we have referred, the Jersey City Water Supply Company sought to have adjudicated by the final decree its right to the present surrender to it of the $500,-000, its contention being that, by the delivery of the release aforesaid, its right to the money had become perfect. This was refused upon the ground, however, that it was not properly embraced in the subject-matter of the litigation, and that the proper way to raise the question was by a supplemental bill to be filed by the water supply company. *Jersey City* v. *Flynn, 78 Atl. Rep. 391.* See, also, *Jersey City* v. *Jersey City Water Supply Co., 79 N. J. Eq. 215.* That has been done, and the decree made thereon dismissing such supplemental bill is now before us on the present appeal.

On the final hearing, Vice-Chancellor Lewis considered that the delivery of the release did not entitle the water supply company to the present payment of the $500,000, and in this, we think, he was right.

The question at issue is, Has the water supply company, by obtaining and delivering to the city the so-called release of May 12th, 1909, fulfilled the condition of the fourth paragraph of the contract between the water supply company and Jersey City of July 8th, 1901, so as to be entitled to the payment of the $500,000 retained under the decree?

Of course, the determination of that question depends upon the true construction of the language of the contract.

The cardinal rule in the construction of contracts is that the court must, if possible, ascertain and give effect to the mutual intention of the parties, as far as that may be done without the violation of legal principles. And while an instrument must be construed according to the intent of the parties as manifested by the instrument itself, yet, where the construction is doubtful, the court may look into the surrounding circumstances and avail itself of such light as they may afford in ascertaining the true meaning of the language and terms employed. *Fletcher* v. *Interstate Chemical Co., 94 N. J. Law 332; affirmed, 95 N. J. Law 543.*

So considered the rights of the parties under the contract are quite certain.

The purpose of the retention of the $500,000 was to protect Jersey City against the abstraction of water from the Rockaway river by the canal company and its lessee to such an extent as to reduce its daily supply below the figure fixed by the contract, and that protection could only be afforded by the actual termination of the canal company's right of diversion under its charter.

As we have seen, the fourth paragraph of the contract provided that the $500,000 retained should be paid whenever the water supply company should

"deliver to Jersey City a *valid release* from the Morris Canal and Banking Company and its lessee, releasing all their rights to divert the waters of the Rockaway river watershed out of said river above said proposed reservoir site, the same to take effect upon their abandonment of the navigation of said canal between Dover and Montville, *under legislative sanction.*"

Properly construed, that means that the money should be surrendered to the water supply company as soon as a *valid* release was delivered, which should be presently effective—that is, one which should extinguish any future right of appropriation by the canal company. Now, the so-called release which was executed and delivered, although following the form of the contract, does not comply with the manifest intent and purpose of the contract. By its terms *it does not take effect until abandonment* of the navigation of the canal between Dover and Mont-

ville *under legislative sanction.* Legislative sanction has not been given. The release, therefore, was not effective when it was delivered; it is not effective to-day, and may never be effective, for the legislature may never release the canal company from its public duty of operating the canal between the points mentioned in the document. Under present conditions, the instrument, while in the form of a release, is not the *valid release* contemplated by the contract, since it never can become operative in the slightest degree until the provision with relation to abandonment under legislative sanction has been fulfilled.

The supplemental bill of the water supply company was therefore properly dismissed, with costs.

The water supply company further complains of that part of the decree of dismissal which allows Jersey City a counsel fee to be taxed in the costs and to be paid by the company.

But we think the allowance was proper. No complaint is made as to the amount of the fee, the sole contention being that it was improper, in view of the fact that the prevailing party is a municipal corporation, the argument being based upon the theory (without any evidence to support it) that the city "had not been put to any additional expense" by the litigation. But the mere fact that the successful party is a municipal corporation does not deprive the court of chancery of power to award a counsel fee to the successful party to be taxed in the costs and to be paid by the unsuccessful party. *P. L. 1910 p. 427.*

The decree below will be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, HEPPENHEIMER, ACKERSON, VAN BUSKIRK—11.

*For reversal*—WHITE, WILLIAMS, GARDNER—3.