This is a vendee's suit for specific performance. The facts have been stipulated. All necessary inferences which may be drawn from them are in legal effect a part of the facts agreed. Barre
v. Bethel (Vt.), 145 Atl. Rep. 410. By letter dated April 25th, 1941, the defendant, Building and Loan Association, offered to sell complainant certain land at a stated price. On May 7th, complainant orally informed defendant's secretary of his acceptance of the offer. This offer and acceptance constitute the contract on which complainant sues.
The first defense is laches. Since April 25th, the Association had been taking steps looking toward dissolution. On June 11th, the Commissioner of Banking and Insurance approved the Association's resolution to dissolve and liquidate, but trustees were not elected pursuant to R.S. 17:12-82 until July 17th. Within a couple of weeks thereafter, one of the trustees told complainant "that the transaction was off." And on August 15th, defendant's secretary mailed complainant a check for $100 to reimburse him for a payment he had made on account of the purchase. Six days later, complainant's attorneys wrote defendant returning the check and advising that complainant "is ready, willing and able to perform his part of the contract, and calls upon the trustees to perform the contract on their part. If you will advise us as to when and where we may make formal tender of the consideration called for under the contract, we will make the necessary arrangements." Complainant, thereafter, on several occasions, demanded performance, but made no formal tender of the consideration. On September 19th, defendant's attorney replied to the letter of August 21st. He stated that for certain reasons the trustees felt there was no obligation imposed on them to regard the transaction as a valid sale binding on them. The bill was filed October 18th.
A bill for specific performance for the sale of land must be promptly filed after definite refusal by the opposite party to perform the contract. "The doctrine is that the failure of the party receiving notice of abandonment to make immediate assertion of his right to enforce the contract, may be *Page 363 
considered as such an acquiescence in the notice, and an abandonment of equitable rights as to leave the parties to their legal remedies and liabilities. Agens v. Koch, 74 N.J. Eq. 528,536. Other cases on the subject are Gariss v. Gariss,16 N.J. Eq. 79; Ketcham v. Owen, 55 N.J. Eq. 344; Storch v.Tepperman, 99 N.J. Eq. 48, and Schaffer v. Latta, 113 N.J. Eq. 589.
Vice-Chancellor Emery, in the Ketcham Case, observed that in the English courts a year seems to have been fixed as a limit of time for filing a bill after notice of abandonment, but he did not himself indicate that any special limit should be fixed. Rather, he considered that the circumstances of each case should govern. However, it may be noted that in none of the cases which I have cited did the complainant lose his remedy of specific performance by a delay of less than one year. In the present instance, from the trustees' repudiation of the contract until the beginning of the suit, was three months. During the first month, since defendant continued to hold complainant's deposit, complainant might well consider that the disavowal of the contract was not final. No change in the value of the land appears, or any alteration of the circumstances of the defendant which made its position more unfavorable in October than in July. The bill was filed with sufficient promptness after defendant's repudiation of the contract.
Laches is alleged in another aspect. Until the letter of complainant's attorneys was written on August 21st, there was no memorandum of the contract signed by complainant or anyone on his behalf, and hence the contract was not enforceable against him if he should plead the statute of frauds. When contracts are optional in respect to one party, delay on his part is viewed with special strictness. "If he takes advantage of his position to speculate upon the opposite party, a court of equity will not encourage or aid him in such speculation." Stoutenburgh v.Tompkins, 9 N.J. Eq. 332, 345, where complainant waited more than three years; Meidling v. Trefz, 48 N.J. Eq. 638 (two years delay during which the land materially increased in value);Ketcham v. Owen, supra (three years); Milmoe v. Murphy,65 N.J. Eq. 767; 56 Atl. Rep. 292. *Page 364 
In the present case, during four months, the contract was not binding on complainant and then another month and a half elapsed before suit was begun. But the delay does not seem to have prejudiced the defendant at all. The defense of laches cannot be sustained.
Defendant also argues that the contract was too uncertain to permit of specific performance. The letter addressed by the secretary of the association to complainant, dated April 25th, 1941, reads:
"Your offer for 97 Arlington Boulevard, North Arlington, of $5,000 in stock and $500 in cash, less $150 in lieu of commission, was accepted, provided the frontage of the property sold be 27 feet. Please advise us whether or not this provision is acceptable."
For the purpose of ascertaining the meaning of a contract, the court must consider the situation of the parties and the accompanying circumstances. Jersey City v. Jersey City WaterSupply Co., 93 N.J. Eq. 620; Bellisfield v. Holcombe, 102 N.J. Eq. 20; Cameron v. International Alliance, c., 119 N.J. Eq. 577; Fletcher v. Interstate Chemical Co., 94 N.J. Law 332;95 N.J. Law 543; Basic Iron Ore Co. v. Dahlke, 103 N.J. Law 635;Corn Exchange National Bank and Trust Co. v. Taubel,113 N.J. Law 605. Defendant says, first, that the description of the property is uncertain. At the time this letter was written, defendant owned a parcel of land known as Nos. 97 and 99 Arlington Boulevard. I gather that the property had been conveyed to the defendant by two deeds, of which the one for 97 Arlington Boulevard, conveyed a frontage of 29.16 feet. The parties agree that it was their intention that a frontage of only 27 feet should be conveyed to complainant, but the defendant says that there is no telling whether the extra 2.16 feet should be cut off from the side adjoining No. 99 so as to increase the width of that lot, or whether the slice should be taken from the opposite side, leaving defendant an isolated ribbon of land. The latter supposition borders on the absurd, since nothing in the case indicates a possible use for a parcel 100 feet deep by 2.16 feet wide. A reasonable meaning should be given to a contract.International Signal Co. v. Marconi, c., Company of *Page 365 America, 89 N.J. Eq. 319; 90 N.J. Eq. 271; Oliver v.Autographic Register Co., 126 N.J. Eq. 18. Plainly, the parties intended that there should be conveyed to complainant the 27 feet furthest from No. 97.
Uncertainty is also alleged in respect to the purchase price because the writing does not explain the meaning of "$5,000 in stock." But it is and was a common practice for building and loan associations to sell land and accept in payment their own stock at the withdrawal value thereof. It is stipulated that defendant's board of directors, as far back as August 15th, 1940, had put prices on this lot and other lots payable partly in "stock." The defendant, in January, 1941, had sold another lot to complainant for a price, as stated in the minutes of defendant's board of directors, which included "$5,000 in stock" without other description. The formal contract executed in that instance shows that this meant shares of defendant association at withdrawal value. A reasonable inference is that the word "stock" in the defendant's letter of April 25th has the same meaning. Defendant had outstanding not only installment shares but income shares. It is optional with complainant to use either class of shares or both in payment for the land.
Complainant further contends that the contract evidenced by the memorandum is incomplete and uncertain since it fails to set forth "the type of title and deed to be given and whether there was to be any apportionment of taxes, interest, insurance or rents." The law provides all these terms. In the absence of special equities or agreement to the contrary, the grantor must convey good title in fee-simple, by deed of bargain and sale, without covenants. Lounsbery v. Locander, 25 N.J. Eq. 554.
Taxes are apportioned according to the statute. R.S. 54:4-56.Millville Aerie, c., v. Weatherby, 82 N.J. Eq. 455. The right of possession and rents go with the legal title so that rents falling due before title passes belong to the vendor. 66 C.J.1034 and 1041; Handlan v. Bennett, 51 Fed. Rep. 2d 21.
As to interest, it is not stated that any mortgage encumbers the title. If interest on the purchase price is meant the price is not payable until the deed is delivered. Ackley v. Richman,10 N.J. Law *Page 366 304. And no interest runs until then or until the vendee is put in possession. Fire or liability insurance which a land owner procures for his own protection is entirely separate from his estate in the land and does not pass to the grantee of the land as an incident of the land title. Generally the parties agree that the grantee shall take over the insurance and pay to the grantor the pro rata unearned premiums, since this course is advantageous to both; but such an assignment is collateral to the sale of the land. Unless the vendee agrees to buy the insurance, he is not obligated to do so. Millville Aerie, c., v.Weatherby, supra.
There is no indication in the cause before me that negotiations were continuing, or that the parties intended to reach special agreements in regard to these or any other matters connected with this sale. On the contrary, the agreement reached seems to have been regarded by them as complete and final.
When parties enter into negotiations and reach a tentative agreement, but do not intend to be bound until a formal contract be executed, they cannot be held to their tentative bargain. But if the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed. Wharton v. Stoutenburgh,35 N.J. Eq. 266. To apply these rules to the litigation before me. After complainant accepted defendant's offer, he asked the latter's attorney when the contract would be ready. And upon the sale of another lot the preceding January, the parties entered into a formal contract of sale. These facts justify the inference that the parties, or at least complainant, contemplated a formal contract in the present instance. If inference may be drawn from inference (Parave v. Public Service, c., Co.,109 N.J. Law 155; Jackson v. Delaware, Lackawanna and Western Railroad Co.,111 N.J. Law 487), here is some proof that the parties did not intend to be bound until the execution of that document. But there are weightier circumstances to the contrary: The acceptance of $100 on account of the purchase price, and the absence of *Page 367 
any mention of a formal contract in the offer and acceptance. In every case cited by counsel, the memorandum sued on expressly referred to another paper to be drawn and signed. WaterCommission of Jersey City v. Brown, 32 N.J. Law 504; Donnelly
v. Currie Hardware Co., 66 N.J. Law 388; Tansey v. Suckoneck,98 N.J. Eq. 669; Hobelman v. Cavallo, 102 N.J. Eq. 243; Levine
v. Lafayette Building Corp., 105 N.J. Eq. 532; Crescent Hill,Inc., v. Ressler, 116 N.J. Eq. 346. Lastly, the defendant for four months, or until September 19th, did not suggest that the want of a formal contract was a reason for refusing performance. I conclude that the parties intended to be bound and are bound accordingly.
In Miller v. Cameron, 45 N.J. Eq. 95, where complainant had not signed the contract, the bill was held demurable because it did not show a tender. But the contrary was ruled in Miller v.Headley, 109 N.J. Eq. 436, where a tender would have been unavailing. Complainant, in the suit before me, to make a tender must first purchase shares of the defendant association. In view of the trustees' attitude, it seems to me that his failure to buy and tender the shares in advance of the suit, or of a decree establishing his right, ought not bar his plea for relief.
There will be a decree for specific performance. Since the contract was made, the trustees have paid to shareholders a liquidating dividend of 10 per cent. Of course, this will affect the settlement of the conveyance. Complainant, instead of $5,000 in stock, must deliver $4,500 in stock plus the dividend of $500 in addition to the cash stipulated in the contract. *Page 368