Specific performance of an agreement to purchase a leasehold interest in the property known as Nos. 2822 to 2826 Hudson Boulevard, Jersey City, New Jersey, is sought by the complainant. It alleges that the defendant corporation agreed to sell its leasehold interest for $30,000 by the payment of $17,500 in cash (less adjustments) and by the assumption of a $12,500 mortgage.
The defendant practically denies everything alleged by the complainant excepting the ownership and the existence of the mortgage. It charges that the action is barred under the statute of frauds which requires a written memorandum of the agreement.R.S. 25:1-5.
The president and principal stockholder of the defendant corporation is Julius Vinik, an experienced real estate operator, who, it is alleged, on January 9th, 1945, executed a contract in writing on behalf of the defendant to J.I. Kislak, Inc. (ExhibitC-3), wherein among other things, the Kislak organization was authorized to sell the leasehold in question for the sum of $30,000, payable as aforesaid. The defendant agreed to pay Kislak 10% of the purchase price as commissions.
On January 15th, 1945, Kislak produced a prospective buyer, Alfred Scolnick. On that day Vinik and Scolnick met at Kislak's office, and discussed terms for the sale and purchase of the leasehold; but no agreement was then reached. At a later meeting an agreement was reached according to Scolnick who says they shook hands and Vinik said, "Okay, the building is yours." The price then was fixed at $17,500 in cash plus the assumption of the mortgage. A deposit of $1,000 was given to Kislak by Scolnick. On or about February 1st, 1945, at a meeting in Kislak's office, Vinik repudiated the agreement. Kislak then demanded a broker's commission *Page 499 
for producing a purchaser, which Vinik refused to pay.
Kislak, through its assignees instituted an action against the defendant in the Court of Common Pleas in Hudson County for commissions of $3,000, and on February 21st, 1945, the defendant was served with process. The action is pending.
On February 28th, 1945, Vinik wrote a letter to Kislak's lawyer in which he said that he would be ready to "close this matter and will have all the papers to effect a transfer of the same lease to the purchaser at George Eichler's office, 26 Journal Square, Jersey City, on Saturday (March 3d 1945), 2 P.M." (ExhibitC-4.) The letter was on Vinik's letter-head and was sent by registered mail, return receipt requested.
A closing date for the sale of the lease was fixed for March 26th, 1945.
On March 21st, 1945, Scolnick formed the corporation, "Al-Sco Realty Company, Inc.," and filed a certificate of incorporation in the office of the Secretary of State. Scolnick intended to have title to the lease in question taken in the name of the newly formed company. He accordingly assigned his contract to the Al-Sco Realty Company, Inc. (Exhibit C-5.)
Scolnick had the title to the premises covered by the lease searched and obtained a survey, abstract of title, Trenton searches, tax searches, c.
On March 24th, 1945, the defendant adopted a written resolution (Exhibit C-1), wherein its officers were authorized to "execute and deliver an assignment of said lease-hold to the said Al-Sco Realty Company, Inc., for a consideration of Thirty Thousand ($30,000.00) Dollars," and to pay Kislak 10% commissions. The resolution was signed by Vinik and the other directors of the defendant corporation, and certified to by Vinik's wife. It was prepared by Vinik's lawyer at Vinik's request, and in Vinik's presence.
On March 26th, 1945, at 2:00 P.M., the parties met to close the transaction. Adjustments were made including taxes, insurance, rents, c., all of which consumed about two hours. *Page 500 
A paper-writing relating to fixtures owned by Vinik and to be removed by him from the premises after the closing, was signed and delivered by Vinik to Scolnick (Exhibit C-2).
Vinik as president of the defendant corporation signed a paper-writing wherein the defendant agreed to pay all tax arrears (Exhibit C-7).
A writing relating to the status of the nine tenancies in the premises was signed and given by Vinik as president of the defendant corporation (Exhibit C-6).
An assignment of the leasehold in question was produced, executed, and delivered by the defendant.
After the closing statement was prepared and submitted by Mr. Eichler, counsel for Vinik, he stated that the purchase price was $42,500 instead of $30,000 as originally agreed upon. That sum the complainant refused to pay and the defendant refused to convey.
Vinik testified at the hearing that he had agreed to sell the premises to Scolnick for $30,000, payable $17,500 in cash and the assumption of the mortgage, but that he changed his mind after he was served with summons and complaint in the Kislak commission suit.
The point here for decision is — was there an agreement? And if that is established — was there a memorandum in writing sufficient to satisfy the statute of frauds?
Vinik's attitude in the transaction under consideration was characterized by many contradictions. However, the exhibits are declaratory of the truth of the situation.
Exhibit C-3 is a contract authorizing Kislak to sell for $30,000, payable $17,500 in cash and $12,500 by the assumption of the mortgage. Vinik supported this exhibit by his testimony. He also testified that he subsequently raised the purchase price from $30,000 to $42,500.
In Vinik's letter of February 28th, 1945, to Mr. Abraham Chazin, Kislak's lawyer (Exhibit C-4) hereinabove mentioned, wherein he said he was ready to go through with the deal, he mentioned no change or increase in the purchase price.
The letter in part stated "I would like to arrange to close this matter and will have all the papers to effect a transfer of the same." *Page 501 
The written exhibits establishing the contract appear to be:
(1) The authorization to Kislak (Exhibit C-3, January 9th, 1945);
(2) The Vinik letter to Chazin (Exhibit C-4, February 28th, 1945), after service of process upon Vinik in the Kislak commission suit;
(3) The resolution of the directors of Vinik's corporation (Exhibit C-1, March 24th, 1945);
(4) The assignment of rents (Exhibit C-6, March 26th, 1945);
(5) The assumption of tax arrears (Exhibit C-7, March 26th, 1945).
These instruments signed by the defendant and Vinik indicate a definite agreement to sell the premises for $30,000, payable $17,500 cash and $12,500 by the assumption of the existing mortgage. They, in my opinion, satisfy the statute of frauds.
In Merritt v. Brown, 21 N.J. Eq. 401, the court, among other things, said:
"The jurisdiction is founded on the sure ground that it is the province of the court of conscience to prevent the statute of frauds from being made productive of the very evils it was designed to suppress."
The resolution of the defendant's directors (Exhibit C-1), embodying the terms of the transaction, in part reads as follows:
"Mr. Vinik stated that on January 9, 1945, he executed an authorization to J.I. Kislak, Inc., at 32 Journal Square, Jersey City, New Jersey, to sell the corporation's lease-hold covering No. 2822, No. 2824 and No. 2826 Hudson Boulevard, Jersey City, for the sum of Thirty Thousand ($30,000.00) Dollars, for a commission of ten per cent (10%) of the purchase price. He further stated that he was informed by J.I. Kislak, Inc., that a purchaser for same had been procured, the AL-SCO REALTY COMPANY, INC. Thereupon a motion was duly made and seconded to the effect that the corporation, by its proper corporate officers, execute and deliver an assignment of said lease-hold to the said AL-SCO REALTY COMPANY, INC., for a consideration of Thirty Thousand ($30,000.00) Dollars. Upon receipt thereof, to pay the said J.I. Kislak, Inc., a commission of ten per cent (10%) of the purchase price. The motion was unanimously carried." *Page 502 
It contains all the elements of a specific agreement, to wit:
(1) Name of vendee (complainant).
(2) Name of vendor (defendant).
(3) Location of property.
(4) Purchase price.
The testimony on behalf of the complainant by Scolnick and Abraham Chazin, Jacob Siegal, Murray Siegel and Joseph Siegel, confirms the existence of the agreement between Scolnick and Vinik and the defendant corporation.
While the defendant sets up the statute of frauds, R.S.25:1-5, as a defense, it, in effect, admits the existence of an agreement, but denies its enforcibility.
The events of the closing of the title would indicate that Vinik was not acting in good faith.
Vice-Chancellor Stein in Monahan v. McElligott, 136 N.J. Eq. 306; 41 Atl. Rep. 2d 399; affirmed, 137 N.J. Eq. 176;44 Atl. Rep. 2d 30, said:
"A memorandum of a contract for the sale of land complies with the statute of frauds, N.J.S.A. 25:1-5, though it does not in terms state an agreement to sell, if from a consideration of the whole memorandum it may be gathered that it is the intention of one party to convey and the other party to purchase. Wollenburg
v. Rynar, 96 N.J. Eq. 138; 124 Atl. Rep. 361; Bateman v.Riley, 72 N.J. Eq. 316; 73 Atl. Rep. 1006.
 * * * * * * *
"Upon the theory that all persons are inherently honest, it must be presumed that he intended to carry out his agreement. He will in good equity be held to have so intended and bargained."
In the instant case the written evidence shows "the intention of one party to convey and the other party to purchase." SeeMoran v. Fifteenth Ward Building and Loan Association,131 N.J. Eq. 361; 25 Atl. Rep. 2d 426.
Equity will never permit the statute of frauds to be used to perpetrate a fraud, and that is what it would do if this court sustains the defendant's attitude.
See Plummer v. Keppler, 26 N.J. Eq. 481, wherein the court, among other things, said: *Page 503 
"The remedy by specific performance is discretionary; the question is not, what must the court do, but what, in view of all the circumstances of the case in judgment, should it do to further justice. When the contract has been fairly procured and its enforcement will work no injustice or hardship, it is enforced almost as a matter of course; but if it has been procured by any sort of fraud or falsehood, or its enforcement will be attended with great hardship or manifest injustice, the court will refuse its aid."
In the case of Rapps v. Tulenko, 102 N.J. Eq. 207;140 Atl. Rep. 244, it was held that the statute of frauds does not require a contract for the sale of land to be signed by both parties, but it is sufficient if the party being sued signed.
This rule was reiterated in Stillman Hoag, Inc., v. Peeck,134 N.J. Eq. 136; 34 Atl. Rep. 2d 577, where the court asserted that failure of the vendee of real estate to sign the contract of sale does not prevent him from securing a decree of specific performance.
Vinik, as heretofore stated, is a real estate broker having had considerable experience in his profession, and the writings upon which the complainant relies were prepared by him and his lawyer. They cannot with good grace repudiate them now. In Miller v.Headley, 109 N.J. Eq. 436; 158 Atl. Rep. 118, the court, among other things, said:
"As a lawyer of twenty-five years standing, he must have intended it to have binding force and he cannot be suspected of deliberately preparing the agreement in such a manner as to provide legal means of escaping performance; hence all doubts and omissions should be resolved against him so far as possible."
I believe that the complainant is entitled to the relief sought. *Page 504